FANNIE COBB SPEIGHT, Widow, v. BRANCH BANKING AND TRUST COMPANY, Administrator of the Estate of JAMES E. SPEIGHT; JOHN H. SPEIGHT and Wife, LILLIE SPEIGHT; GROVER C. SPEIGHT and Wife, RUTH SPEIGHT; C. L. SPEIGHT and Wife, PAULINE SPEIGHT; MARY SPEIGHT CRAFT and JOE CRAFT, Her Husband; M. B. SPEIGHT and Wife, ANNIE SPEIGHT.

(Filed 26 February, 1936.)

1. **Trusts A b—Plaintiff held entitled to land under constructive trust under facts of this case.**

Plaintiff signed her husband's note as surety for the accommodation of her husband, and executed a mortgage, with joinder of her husband, on land belonging to her individually as security for the note. Upon default, the mortgage was foreclosed and the land purchased at the sale by the husband who paid off the debt with his own money and took title in himself. *Held:* The land was impressed with a constructive trust in the hands of the husband, since the husband owed the wife the duty to fully indemnify her for loss occasioned her as surety on his note, and upon the husband's death, she is entitled to recover the land as against the husband's estate.

**2. Same—Nature of constructive trust in general.**

Where a person obtains legal title to property by the violation of a fiduciary relationship or by the neglect to discharge some duty or obligation with respect to the property, or in any other unconscientious manner, equity will impress a constructive trust upon the property in favor of the one who is in good conscience entitled to it.

**3. Equity B a—**

Where it is agreed that the party entitled to equitable relief had no knowledge of the facts constituting the basis of her rights until shortly before suit, the question of laches cannot arise.

APPEAL by defendants from *Cranmer, J.,* at November Term, 1935, of EDGECOMBE. Affirmed.

This case was heard by the court below upon an agreed statement of facts substantially as follows:

Plaintiff is the widow of James E. Speight, who died intestate in 1934. The defendant bank is administrator of the estate of James E. Speight, and the other defendants are his brothers and sisters, and only heirs at law.

The plaintiff Fannie Cobb Speight, prior to 10 January, 1921, was owner of a certain tract of land containing 79 acres, and on said date James E. Speight, being indebted to John H. Speight in a sum in excess of $2,900, executed his promissory note, payable to John H. Speight, and this was signed by plaintiff as surety. And on the same date plaintiff with joinder of her said husband executed and delivered to said John H. Speight a mortgage on her said land for the accommodation of James E. Speight, and as security for the indebtedness evidenced by his said note.

Default having been made in payment of said note and mortgage, the land was advertised for sale by John H. Speight, mortgagee, under the power contained in the mortgage. After the sale, James E. Speight and the plaintiff instituted an action to restrain delivery of the deed to the purchaser. At September Term, 1926, judgment was rendered determining the balance due on the note and mortgage to be $2,969.63, and appointing commissioners to sell. Upon sale by the named commissioners, the land was first bid off by John H. Speight, mortgagee, and later, upon increased bid by James E. Speight, was conveyed to said James E. Speight for $2,625.

James E. Speight used his own money to raise the bid and paid with his own money the purchase price to the mortgagee, the commissioners reporting they had delivered deed to James E. Speight, "the said John H. Speight having acknowledged to the commissioners that James E. Speight had paid unto him the sum of $2,625 and fully satisfied the judgment rendered in the action of James E. Speight and wife, Fannie Cobb Speight, *v.* John H. Speight."

It is admitted that plaintiff had no information of the fact that the deed to her land had been made by the commissioners to James E. Speight until after his death in 1934.

This action was instituted 22 March, 1935, for the purpose of declaring the trust and having title to said land vested in her.

*W. A. Lucas and Gilliam & Bond for plaintiff.*
*H. H. Philips for defendants.*

DEVIN, J. Reduced to its last analysis, the question here presented is this: When the wife is surety on the note of her husband and executes a mortgage on her land as security for his debt, and the husband subsequently buys the land at a sale under the mortgage, pays off the debt with his own money, and takes title to the land to himself, will a court of equity impress on the legal title thus acquired a trust in favor of the wife?

We think this question must be answered in the affirmative.

It is admitted that the plaintiff signed the note as surety for her husband, James E. Speight, and that she executed the mortgage on her individual land as security for his debt. Thereupon, in consequence of the relationship of principal and surety thus brought about, James E. Speight owed a duty to his surety with reference to her property put up as security for his debt, and he could not, in good conscience, take advantage of the lien imposed on the land solely for his benefit, and of the position so created, to acquire title to the land and hold same in hostility to the right of the surety, to whom was due complete indemnification. Equity, which acts *in personam,* would regard him as holding the legal title to the property as trustee for the benefit of the surety. Thus, a trust would be created by the operation of law, and it would fall into the category denominated in equity jurisprudence as a constructive trust.

"Constructive trusts arise by pure implication of equity without regard to the intention of the parties, or, necessarily, the frustration of fraud." Bispham's Eq., sec. 91.

One of the most ordinary trusts of this kind is that which grows out of the rule of law forbidding one occupying a fiduciary or *quasi*-fiduciary position from gaining any personal advantage touching the property as to which the fiduciary position exists. Bispham's Eq., sec. 92; *Avery v. Stewart,* 136 N. C., 426.

We quote from Pomeroy on Equity Jurisprudence, sec. 1044, as follows: "Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when

the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership."

A constructive trust has been concisely defined as "one not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but only by the construction and operation of equity in order to satisfy the demands of justice." 65 C. J., 223, 224.

It seems to be a well settled rule that if one person obtain legal title to property by the violation of a fiduciary relationship, or in any other unconscientious manner, equity will impress a constructive trust upon the property in favor of one who is in good conscience entitled to it. And this applies where such person owes some duty or obligation with respect to the property. 26 R. C. L., 1236, 1237.

Equity applies the principles of constructive trusts wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer. Pomeroy Eq. Jur., sec. 1053; *Edwards v. Culberson,* 111 N. C., 342.

The principle is stated in Pomeroy's Equity Jurisprudence that while ordinarily constructive trusts, properly so called, may be referred to what equity denominates fraud, actual or constructive, many instances spring from the violation of some fiduciary obligation, and in them "there is, latent perhaps, but none the less real, the necessary element of that unconscientious conduct which equity calls constructive fraud." Pom. Eq. Jur., sec. 1044.

The equitable doctrine of constructive trusts is fully discussed in two well considered opinions from this Court, one by *Walker, J.,* in *Lefkowitz v. Silver,* 182 N. C., 348, and the other by *Adams, J.,* in *Bryant v. Bryant,* 193 N. C., 372.

It was held in *Jordan v. Simmons,* 169 N. C., 140, that a husband, who had the management and control of his wife's property, should not be allowed to buy her property at a tax sale without her knowledge or consent, and hold same adversely to her. *Ruark v. Harper,* 178 N. C., 249.

It is apparent that the equitable principles herein stated apply to the facts in the case before us.

There is no question here of laches, or of affirmance by acquiescence on the part of the plaintiff. These could only arise after knowledge, and here it is expressly agreed that the plaintiff had no knowledge or information that the deed to her land had been made to James E. Speight until shortly before this suit.

The judgment of the court below that the plaintiff is the equitable owner of the described land is

Affirmed.