PATRICIA LOWRY, PLAINTIFF v. R. FRANK LOWRY, JR., AND SMITH MOORE SMITH SHELL & HUNTER (Now SMITH HELMS MULLISS & MOORE), DEFENDANTS

No. 8918SC1051

(Filed 3 July 1990)

1. **Divorce and Alimony § 19.5 (NCI3d) — settlement agreement based on mutual mistake — insufficiency of evidence**

    The trial court properly entered summary judgment for defendant on plaintiff's claim that the parties' settlement agreement was the result of a mutual mistake where a $6,300 mathematical error may have resulted in plaintiff's use of incorrect data to make her settlement offer, but there was no showing that the parties' subsequent agreement was based on the erroneous information; nor was there evidence that the parties were mutually mistaken as to whether plaintiff was to receive $550,000 gross or net in settlement of the marital estate.

    **Am Jur 2d, Divorce and Separation § 831.**

2. **Attorneys at Law § 5.1 (NCI3d) — computational error in negotiations — no negligence by attorneys**

    The trial court properly entered summary judgment for defendant attorneys on plaintiff's claim of negligence where plaintiff made no showing as to how a computational error, made early in the settlement process but later corrected and

LOWRY v. LOWRY

[99 N.C. App. 246 (1990)]

not even reflected in the final separation agreement, amounted to negligence on the part of her attorneys.

**Am Jur 2d, Attorneys at Law §§ 197, 208.**

3. **Attorneys at Law § 5.1 (NCI3d)— attorneys' representation of plaintiff in settlement negotiations—no negligence by attorneys**

The trial court properly entered summary judgment for defendant attorneys on plaintiff's claim of negligence in agreeing to settle her case for an amount which she did not authorize, failing adequately to explain the amount of the final settlement to plaintiff, and failing adequately to document the settlement agreement, since plaintiff, by signing the agreement, having it incorporated into a consent judgment and consent order, and receiving the benefits of the agreement for almost three years, ratified the separation agreement and was estopped from claiming that it was not the settlement she authorized.

**Am Jur 2d, Attorneys at Law §§ 197, 208.**

4. **Attorneys at Law § 5.1 (NCI3d)— attorneys' representation of plaintiff in settlement negotiations—no constructive fraud— no breach of fiduciary duty**

The trial court properly entered summary judgment for defendant attorneys on plaintiff's claims of constructive fraud and breach of fiduciary duty where all the evidence tended to show that plaintiff's counsel was more than merely open, fair, and honest in her dealings with plaintiff but was a zealous advocate on plaintiff's behalf, writing over 19 letters to plaintiff, conducting over 88 telephone conferences with her, and having conferences in the office for the purpose of explaining matters.

**Am Jur 2d, Attorneys at Law § 215.**

5. **Attorneys at Law § 7.7 (NCI3d)— defendants entitled to attorney fees—no findings made—denial of sanctions improper**

The trial court erred in denying defendants' motion for sanctions without making any findings of fact or conclusions of law as to whether defendants were entitled to attorney fees.

**Am Jur 2d, Costs § 72.**

APPEAL by plaintiff from judgments entered 25 April 1989 and 1 May 1989 in Superior Court, GUILFORD County, by *Judge Russell G. Walker, Jr.* Defendants cross-appeal. Heard in the Court of Appeals 10 April 1990.

*Clark & Wharton, by David M. Clark, for plaintiff-appellant.*

*Booth, Harrington, Johns & Campbell, by Frank A. Campbell, for defendant-appellee and cross-appellant R. Frank Lowry, Jr.*

*Adams Kleemeier Hagan Hannah & Fouts, by Daniel W. Fouts and Margaret E. Shea, for defendant-appellee and cross-appellant Smith Helms Mulliss & Moore.*

LEWIS, Judge.

Plaintiff is appealing the entry of summary judgment against her in this legal malpractice action. Defendants have cross-appealed the denial of their motion for attorneys' fees pursuant to G.S. 1A-1, Rule 11.

Plaintiff and defendant R. Frank Lowry, Jr. were married 28 December 1964. They divorced and entered into a separation agreement in November, 1984 ("Separation Agreement"). On 29 October 1985, plaintiff filed an action against defendant Lowry for breach of the Separation Agreement. On 18 July 1986, the parties entered into a Consent Order which incorporated the Separation Agreement into the court order and made the Agreement subject to specific performance.

Plaintiff was represented in connection with her divorce, alimony and equitable distribution proceeding against defendant Lowry by the defendant law firm Smith, Moore, Smith, Shell & Hunter (now Smith, Helms, Mulliss & Moore, hereinafter referred to as "Smith, Helms").

On 25 November 1987, plaintiff filed a complaint against her former husband and her former attorneys alleging that the settlement agreement was the result of a mutual mistake by plaintiff and defendant Lowry and their attorneys acting on their behalf. The complaint alleges negligence against Smith, Helms and was twice amended to include claims for constructive fraud and breach of fiduciary duty.

LOWRY v. LOWRY

[99 N.C. App. 246 (1990)]

On 6 March 1989, Smith, Helms filed a motion for summary judgment and for attorneys' fees. On 7 March 1989, defendant Lowry filed a motion for summary judgment and attorneys' fees. On 1 May 1989, the trial court entered judgment in favor of defendant Lowry and defendant Smith, Helms dismissing plaintiff's complaint on all claims. In that same order the court denied defendants' motions for attorneys' fees. Plaintiff appeals the entry of summary judgment against her and defendants cross-appeal denial of their motions for attorneys' fees.

## I. Summary Judgment

The entry of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." G.S. 1A-1, Rule 56(c). Summary judgment should be looked upon with favor where no genuine issue of material fact is presented. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

### A. *Summary Judgment in Favor of Defendant Lowry*

[1] We first address whether entry of summary judgment was proper against plaintiff in favor of defendant Lowry.

In her complaint, plaintiff alleges that the settlement agreement was the product of mutual mistake by both parties and their attorneys acting on their behalf. Plaintiff alleges essentially two mistakes contained in the Separation Agreement. First, plaintiff alleges that there was a $6,300 mathematical error in an appendix that she claims was used to value her share of the marital estate. The $6,300 error occurred in totaling defendant Lowry's assets (the appendix reflecting a $472,303 total which should have been $478,603). This appendix was included in a settlement demand letter dated 25 July 1984 from Jeri Whitfield, plaintiff's divorce and settlement attorney, to Richard Pinto, defendant husband's divorce and settlement attorney.

Plaintiff's former attorney Jeri Whitfield admits that the appendix does contain the computational error. However, plaintiff does not dispute the fact that no agreement was reached based upon the 25 July 1984 settlement offer. Plaintiff alleges that the error was carried forward in the settlement negotiations and that her settlement offer was in part based upon the erroneous appen-

dix. She argues that her offer would have been increased by $3,150 had she known of the error. However, at best, this demonstrates that the plaintiff used incorrect data when she made her settlement offer. It does not show that the subsequent agreement was based thereon. Further, plaintiff does not argue that the Separation Agreement was intended to be an equal division of the marital estate. In fact, paragraph sixteen of the parties' Agreement recites that the distribution of the property "is *equitable* and that said distribution is binding upon the parties pursuant to N.C.G.S. § 50-20(d). . . ." (Emphasis added.) We find no issue of material fact based upon the alleged $6,300 error.

Second, plaintiff alleges that the parties were mutually mistaken about whether she was to receive $550,000.00 gross or $550,000.00 net in settlement of the marital estate. Specifically, the plaintiff alleges that the parties were mistaken about a credit that the defendant received for the payment of temporary alimony. In September 1984 Dr. Lowry had paid the plaintiff temporary alimony for eight months in the amount of $4,000.00 per month or $32,000.00. Plaintiff was able to negotiate a credit of $3,000.00 per month or $24,000.00.

On 5 September 1984, Whitfield sent Pinto a settlement demand letter which stated in pertinent part:

> Mrs. Lowry will sign the Separation Agreement as written and will accept $550,000 ($574,000 less $24,000 credit) in settlement of all rights growing out of the marriage . . . Please let me know promptly whether Dr. Lowry intends to sign the Separation Agreement and settle this matter or if we expect to litigate further. This is our final effort to compromise.
> . . .

Attached to this letter is an appendix which contains no mathematical errors. According to the testimony of defendant Lowry and the affidavits of Whitfield and Pinto, the 5 September 1984 settlement demand was not accepted by defendant Lowry. The attorneys continued to negotiate. Pinto's affidavit indicates that he offered to settle for $550,000.00 less credits. Whitfield negotiated a further credit for Ms. Lowry of $1,000.00 for unpaid October alimony and $550.00 for the cost of one-half of an appraisal which she had paid. This made the total credits defendant Lowry was to receive amount to $25,450.00 ($27,000 − $1,000 − $550).

LOWRY v. LOWRY

[99 N.C. App. 246 (1990)]

Ms. Whitfield prepared a handwritten document which indicated the property the plaintiff was to receive. The handwritten worksheet was headed "Property to be received by Pat." The $25,450.00 credit appeared on the worksheet as "advance payment 9 mos. @ 3000 less 1000 for Oct. plus $550 appraisers fee (27000-550-1000 = 25450)." The total settlement figure that appears on the bottom of this worksheet is $550,000.00, not $574,000.00. Plaintiff admits that she had a telephone conversation with Whitfield regarding the numbers on this worksheet. She further admits that Whitfield went over this worksheet with her at the law offices "paragraph by paragraph." Plaintiff's copy of this worksheet which was given to her by Ms. Whitfield indicates that she made a number of notations on the document including a notation to the side of the worksheet adding up how much her attorney's fees, the capital gains tax and the credit defendant Lowry was to receive as one lump figure. Ms. Lowry was given this draft to take home.

The appendix to the final Separation Agreement which plaintiff signed appeared as follows:

APPENDIX I

*Property to be received by Patricia Lowry*

| Item | Value |
| --- | --- |
| 1983 Honda | $7,000.00 |
| Greensboro furniture, fixtures | 30,362.00 |
| Stocks | 9,400.00 |
| Proceeds from sale of Greensboro residence | 33,640.00 |
| | 80,402.00 sub total |
| Promissory Note (at 10% interest) | 40,000.00 |
| Cash, including lump sum alimony | 179,148.00 |
| Pension and profit sharing plans | 225,000.00 |

The total amount of property plaintiff would receive under this appendix is $524,550. The advance payments made by defendant Lowry were not listed. Adding the defendant's credit of $25,450 results in a gross settlement of $550,000. Plaintiff argues that the parties were mutually mistaken as to this credit. She contends that the actual settlement of the parties was to be as set forth in the 5 September settlement demand letter, where she was to receive $574,000 gross; $550,000 net. However, even if we accept

plaintiff's testimony as true for the purposes of summary judgment that she understood that the credit was not to be taken out of her $550,000 net settlement, she has made no showing that defendant Lowry was also acting under this mistaken belief. On the contrary, both the testimony of defendant Lowry and the testimony of Richard Pinto indicate that they were always under the belief that the settlement was for $550,000 gross. There is no evidence that either Pinto or defendant Lowry knew that plaintiff was signing the Agreement under the mistaken belief that the credit had not been taken out of the gross settlement, leaving her only $524,550 as opposed to $550,000. The Separation Agreement on its face shows that the total settlement "to be received" was $524,550. Plaintiff has failed to show any evidence of a mutual mistake by the parties in the execution of this Agreement. A unilateral mistake by a party to a contract, unaccompanied by fraud, imposition, undue influence, or like circumstances of oppression is insufficient to avoid a contract. Summary judgment against plaintiff in favor of defendant Lowry was proper.

B. *Summary Judgment in Favor of Defendant Smith, Helms*

Plaintiff alleged three causes of action against Smith, Helms: (1) Negligence; (2) Constructive Fraud; (3) Breach of Fiduciary Duty.

(1) *Negligence*

a. The $6,300 mathematical error:

[2]   Plaintiff has alleged that attorney Whitfield was negligent in carrying forward the $6,300 mathematical error in the early draft of Appendix I. The uncontradicted evidence shows that Whitfield prepared three other appendices after this draft was prepared. We find no computational errors in any of these subsequent drafts. The affidavits for both Whitfield and Pinto state that the erroneous draft was never relied upon after its initial preparation. Furthermore, plaintiff has merely testified that she relied on the early appendix to make her 5 September 1984 *offer*. This offer, as shown by the continued negotiations and ultimate changes in the final Separation Agreement, was clearly rejected by the defendants. Plaintiff has not made any showing as to how this early error, which was later corrected and not even reflected in the final Separation Agreement, amounts to negligence on the part of her attorney. Summary judgment on this issue was proper.

b. The $25,450 credit:

LOWRY v. LOWRY

[99 N.C. App. 246 (1990)]

[3] Plaintiff has alleged that attorney Whitfield was negligent in agreeing to settle the case for an amount the plaintiff did not authorize, failing to adequately explain the amount of the final settlement to plaintiff, and failing to adequately document the settlement agreement.

Plaintiff admits that (1) Whitfield called her on the telephone and went over the agreed upon terms of the Separation Agreement with her; (2) that she came to Whitfield's office and that Whitfield went over the terms of the Separation Agreement with her "paragraph by paragraph"; (3) that she was given the draft worksheet to take home with her; (4) that she had an opportunity to read the final Separation Agreement before she signed it; (5) that she moved to have this Agreement incorporated into a consent judgment and consent order, and (6) that she signed the consent judgment and consent order.

We hold that summary judgment was proper because plaintiff, by signing the Agreement, having it incorporated into a consent judgment and consent order, and receiving the benefits of the Agreement for almost three years, ratified the Separation Agreement. See Hill v. Hill, 94 N.C. App. 474, 380 S.E.2d 540 (1989) (wife bound by subsequent ratification of property settlement agreement); Amick v. Amick, 80 N.C. App. 291, 341 S.E.2d 613 (1986) (plaintiff estopped from denying validity of separation agreement since plaintiff relied upon and performed some of his obligations pursuant to its terms); Davis v. Davis, 256 N.C. 468, 124 S.E.2d 130 (1962) (party to agreement cannot ignore it when, without excuse, he made no effort to ascertain its terms at time of execution).

The plaintiff was given ample opportunity to read and evaluate the Separation Agreement she signed. She is an educated woman and at one time was a licensed realtor. We find it important to note that the error she alleges required no legal explanation and could easily have been discovered by adding four numbers contained in the Appendix to the Separation Agreement (80,402.00 sub total + $40,000 Promissory Note + 179,148.00 Cash + 225,000 Pension and profit sharing plans = $524,550). This case is very different from our recent holding in Cheek v. Poole, 98 N.C. App. 158, 390 S.E.2d 455, disc. rev. denied, 327 N.C. 137, 394 S.E.2d 169 (1990), where it was held that genuine issues existed as to whether the plaintiff acted reasonably in executing a consent judgment that omitted language that plaintiff's duty to pay his former

wife part of his military pension plan terminated upon death or remarriage in light of the fact that he had produced a letter on law firm stationary advising him that his duty would in fact terminate on the happening of one of those events. We held that a genuine issue existed as to whether a reasonable person would have known of the legal significance of language in the consent judgment. *Id.* at 164-65, 390 S.E.2d 460. Here the dispute is not over the language in the contract and its legal effect. It is over a simple mathematical addition. Her attorney owed her a duty to review and explain to her the legal import and consequences which would result from her executing the Separation Agreement. However, this duty does not relieve her from her own duty to ascertain for herself the contents of the contract she was signing. *Biesecker v. Biesecker*, 62 N.C. App. 282, 285, 302 S.E.2d 826, 828-29 (1983). She has received benefits under the Separation Agreement for almost three years without complaint. We hold that she ratified the contract and affirmed its terms by her actions and is furthermore estopped from claiming that it is not the settlement she authorized. Summary judgment was proper.

(2) *Constructive Fraud & Breach of Fiduciary Duty*

[4] Plaintiff twice amended her complaint to allege causes of action for breach of fiduciary duty and constructive fraud. In order to prove constructive fraud, plaintiff must prove (1) a relation of trust and confidence, and (2) consummation of a transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff. *Booher v. Frue*, 86 N.C. App. 390, 392, 358 S.E.2d 127, 128 (1987), *aff'd*, 321 N.C. 590, 364 S.E.2d 141 (1988); *Terry v. Terry*, 302 N.C. 77, 273 S.E.2d 674 (1981). There is no evidence in the record that defendant Whitfield in any way took advantage of her position of trust to harm the plaintiff. In fact, all of the evidence tends to show that attorney Whitfield was more than merely "open, fair and honest" in her dealings with Ms. Lowry; she was a zealous advocate on Ms. Lowry's behalf. The record shows that plaintiff received over 19 letters from defendant and that over 88 telephone conferences were held. When Ms. Lowry indicated that she did not understand the terms of the Separation Agreement over the telephone, Whitfield told her to come to the office and she did so, receiving a complete explanation of the settlement terms. Ms. Lowry retained Whitfield in later proceedings to enforce the terms of the Separation Agreement as well as having the Agreement incorporated into a consent order. We find that summary judgment was proper as to these claims.

**[5]**  Defendants have cross-appealed denial of their motion for sanctions pursuant to G.S. 1A-1, Rule 11. The trial court's decision to impose or not to impose mandatory sanctions under Rule 11 is subject to *de novo* review. *Turner v. Duke*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). "In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence." *Id*. In the present case the trial court failed to make any findings of fact or conclusions of law. Rather the two Orders each state "the defendant is not entitled to attorney fees" and denies the motions.

In *Turner v. Duke, supra*, no sanctions were originally imposed by the trial judge. The Court of Appeals reviewed the matter on an abuse of discretion standard and found no error. The Supreme Court, however, reviewed the matter *de novo*, pronouncing a new standard and remanded the matter for imposition of mandatory sanctions.

We remand this part of the case to the trial court for findings of fact and conclusions of law so that we can review them as required by *Turner v. Duke, supra*.

Affirmed in part, reversed in part and remanded.

Judges ARNOLD and DUNCAN concur.